UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

KATIE LUNDE as Personal Representative
of the Estate of ISAIAH LUNDE, Deceased,

      Plaintiff,

v.

CARNIVAL CORPORATION and
DR. SIDDHARTHA DOWERA,

      Defendants.

_____/

## WRONGFUL DEATH COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, KATIE LUNDE, as personal representative of the estate of ISAIAH LUNDE, and sues the Defendants, CARNIVAL CORPORATION and DR. SIDDHARTHA DOWERA, and alleges as follows:

## THE PARTIES

1. Plaintiff, KATIE LUNDE, is a citizen of Washington and the wife of ISAIAH LUNDE, deceased, (referred to as "Decedent"), and is in all respects *sui juris*.   At all times material, KATIE LUNDE and ISAIAH LUNDE were husband and wife.

2. Plaintiff brings this action on behalf of the Estate and on behalf of all survivors who are entitled to recover including, but not limited, to:

    A.  Katie Lunde, Wife;

    B.  Payton Grace Lunde, minor child (11), born June 26, 2009.

    C.  Remington James Lunde, minor child (7), born October 25, 2013.

    D.  Mia Marie Lunde, minor child (5), born October 13, 2015.

E.  Everett Dash Lunde, minor child (1), born July 7, 2019.

3.  This is an action for all damages arising from the injuries, suffering and death of the decedent on behalf of the Estate and all survivors and beneficiaries under the General Maritime Law of the United States; the Death on the High Seas Act, 46 U.S.C. § 30301 et seq., and any other applicable wrongful death or survival act, seeking damages in excess of the jurisdictional amount, exclusive of costs, attorneys' fees and interest.

4.  Defendant, CARNIVAL CORPORATION (hereinafter "CARNIVAL"), is a corporation incorporated under the laws of Panama with its principle place of business and worldwide headquarters in Miami, Florida.

5.  At all times material, CARNIVAL is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports within the continental United States, including Miami, Florida.  CARNIVAL derives substantial revenues from cruises originating and terminating in various ports in the State of Florida, including Miami-Dade County, Florida.

6.  At all times material, CARNIVAL owned, managed, operated, maintained, supervised and/or controlled, or was the owner *pro hac vice* and/or charterer of the ocean-going passenger vessel known as the *Carnival Imagination.*

7.  Defendant, Dr. Siddhartha Dowera, was the ship's doctor aboard the *Carnival Imagination* who saw, examined, treated and/or was consulted concerning the medical condition of Decedent while aboard the vessel. Upon information and belief, Dr. Siddhartha Dowera is not a citizen of Florida.

8.  At all times material, Defendant, Dr. Siddhartha Dowera, was an employee and/or apparent agent of Defendant, CARNIVAL, and/or joint venturer with Defendant CARNIVAL,

working aboard the *Carnival Imagination* as a ship's physician and acting within the course and scope of said employment, agency and/or joint venture.

9. At all times material, CARNIVAL employed and/or contracted with the vessel's doctor and nurses, including Defendant, Dr. Siddhartha Dowera (referred to as the "Medical Defendant") who worked aboard the subject cruise ship and provided medical care to the Decedent.

## JURISDICTION AND VENUE

10. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.  In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

11. This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333 because CARNIVAL unilaterally inserts a forum clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this Federal District and Division,* as opposed to any other place in the world.

12. CARNIVAL, at all material times, personally or through an agent:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this State;

    d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193; and/or;

    e. The acts of CARNIVAL set out in this Complaint occurred in whole or in part in this county and/or state.

13. At all times material hereto, the Medical Defendant engaged in substantial and not isolated activities in Florida. Such activities and contacts, assessed over a period of time and

considered collectively, establish jurisdiction under Florida's long arm statute, based on the

following:

a.  The Medical Defendant agreed to insure an entity located in Florida (CARNIVAL) for foreseeable risks.  Specifically, upon information and belief, the Medical Defendant entered into agreements with Florida-based CARNIVAL to indemnify it and insure it. As such, because the Medical Defendant contractually agreed to indemnify CARNIVAL (an entity located in Florida) for any harm resulting from their services (including medical malpractice), the Medical Defendant agreed to insure a person and/or risk in Florida under Florida Statute § 48.193(1)(a)(4).  Section 48.193(1)(a)(4) provides that "any person… who contracts to insure any person, property, *or* risk located in Florida" is subject to the jurisdiction of Courts in Florida. *Id.*

b.  The Medical Defendant appointed CARNIVAL as his exclusive agent in Florida, giving CARNIVAL "absolute and complete control" of all claims brought against them in Florida.  In consideration of working as a ship's doctor for Florida-based CARNIVAL, the Medical Defendant signed indemnity agreements with CARNIVAL. In indemnity agreement, the Medical Defendant appointed CARNIVAL and CARNIVAL's insurer as his exclusive agent, giving CARNIVAL "absolute and complete control of the defenses of all proceedings against [the Medical Defendant]."  By virtue of such appointments and giving CARNIVAL a *quasi*-power of attorney, the Medical Defendant purposefully directed his activities to this forum.   In this case, under the aforementioned agreement, Florida-based CARNIVAL controls and pays for the Medical Defendant's attorney(s) in Florida.  Accordingly, the Medical Defendant appointed an agent in Florida (other than his attorney(s)) to assume complete control of his defenses in this case.

c.  At all times material hereto, the Medical Defendant worked as a ship doctor aboard CARNIVAL's vessels (and/or other cruise lines' vessels), while the vessels were in Florida ports.  During each of these times, while the vessel was in a Florida port or in Florida territorial waters, the Medical Defendant was expected to and/or did in fact provide medical care to passengers in Florida.  As such, harm resulting from the Medical Defendant's services performed in Florida was a foreseeable risk in Florida, for which the Medical Defendant insured CARNIVAL in Florida.  As stated, this grants the Court personal jurisdiction over the Medical Defendant under Florida Statute § 48.193(1)(a)(4). Alternatively, the Medical Defendant's continuing agreements to insure Florida-based CARNIVAL should be considered collectively with all of the Medical Defendant's other contacts (as described herein) to establish jurisdiction under Florida's general jurisdiction statute, §48.193(2).

d.  At all times material hereto, upon information and belief, the Medical Defendant maintained active bank accounts in Florida and/or the United States and earned taxable income from these accounts.

e.  At all times material hereto, the Medical Defendant provided medical care to passengers and crew in Florida ports and/or in Florida territorial waters, while working and being

compensated as a cruise ship doctor.

f. At all times material hereto, the Medical Defendant received medical training and continuing medical instruction in Florida.

g. At all times material hereto, the Medical Defendant purposefully reached out to CARNIVAL (and/or other cruise lines) in Florida and entered into long-term business arrangements with these Florida entities to provide medical services to cruise passengers for profit.

h. All payments of the Medical Defendant's earnings from Florida-based CARNIVAL (and/or other Florida-based cruise lines) were processed by the cruise line(s) in Florida.

i. At all times material hereto, the Medical Defendant (acting in consultation and in concert with CARNIVAL officials/employees located in Miami, Florida) failed to timely evacuate the Decedent to a properly equipped medical center capable of providing the Decedent with the medical care he required given his condition. Accordingly, the facts giving rise to the causes of action in this incident took place, in part, in Miami, Florida, thereby also giving this Court specific jurisdiction over the Medical Defendant.

j. At all times material hereto, the Medical Defendant entered into an agreement with CARNIVAL involving a transaction involving in the aggregate not less than $250,000, and agreeing to submit to jurisdiction in the Florida in accordance with Florida Statute §685.102.

14. Defendants are subject to the jurisdiction of the Courts of this State.

15. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

## FACTS COMMON TO ALL COUNTS

16. CARNIVAL, as a common carrier, was engaged in the business of providing to the public, and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, *Carnival Imagination*.

17. As part of providing vacation cruises, CARNIVAL advertised, marketed and promoted that a competent physician and ship's medical center are available in the event passengers need

medical care for customary charges[1]. CARNIVAL further advertised, marketed and promoted that as a member of Cruise Line International Association, it had adopted the Cruise Industry Passenger Bill of Rights which guarantees its passengers, including the Decedent, the right to have "full-time, professional emergency medical attention."[2]

18. CARNIVAL employed and/or contracted with the medical staff, including the Medical Defendant, onboard the vessel in connection with its operation of the vessel as part of CARNIVAL's business of operating cruise ships and not solely for the convenience of passengers.

19. At all times material, CARNIVAL relied upon and directed the medical staff, including the Medical Defendant, to perform specified duties to assist them in complying with its regulatory duties and obligations, including but not limited to those set forth by the U.S. Public Health Service, Drug Enforcement Agency, Coast Guard and Center for Disease Control. CARNIVAL also relied upon and directed medical staff to fulfill the requirements of the vessel's flag state, to carry a licensed physician as well as those of the United States under both the Cruise Vessel Safety and Security Act, and the general maritime requirement of maintenance and cure owed to its seamen operating the vessel.

20. At all material times, CARNIVAL charged money to passengers for the medical services it provided. Thereby, CARNIVAL is in the business of providing medical services to passengers for profit, and/or CARNIVAL is in the business of operating a floating hospital for its own profit. Herein, CARNIVAL charged Plaintiff a fee for the medical treatment performed by the medical staff, including Medical Defendant, aboard its vessel and for the medicine provided to the Decedent. All of the charges for the medical treatment and medicine were

---

[1] https://help.carnival.com/app/answers/detail/a_id/1136/~/medical-services
[2] https://www.carnival.com/about-carnival/legal-notice/passenger-bill-of-rights.aspx

charged to Plaintiff.

21. Overall, CARNIVAL is in the business of providing medical care. Like other amenities offered aboard its vessels, CARNIVAL also offers to passengers modern medical facilities onboard its ships for profit. *See, Franza v. Royal Caribbean Cruises, Ltd*., 772 F.3d 1225, 1244 n. 14 (11th Cir. 2014).

22. At all times material hereto, CARNIVAL owned, operated, managed, maintained and/or controlled the medical equipment in the ship's medical center aboard the vessel *Carnival Imagination*.

23. At all times material hereto, CARNIVAL had the ability to monitor and control each and every step taken by any crewmember (including the Medical Defendant) working in the medical department via telephone, videoconference, Skype or otherwise. This technology is generally referred to as "Face to Face Telemedicine." Such modern means of communication make the location of the cruise ship effectively irrelevant and allows CARNIVAL to directly control the medical care on the ship.

24. At all times material hereto, the Medical Defendant was in the regular, full-time employment of the ship, as salaried member of the crew, subject to the ship's discipline and the Master's orders, and also under the control of CARNIVAL's shoreside medical department located in Miami, Florida, through modern means of communication such as "Face to Face Telemedicine."

25. At all times material hereto, CARNIVAL had the right to fire the Medical Defendant.

26. At all times material hereto, CARNIVAL was responsible for, and liable for, the actions of the Medical Defendant with respect to treatment, or lack of treatment, of the Decedent based on a theory of *respondeat superior* and/or under the principle of apparent agency.

27. At all times material hereto, the Medical Defendant was a direct employee and/or apparent agent of CARNIVAL, and at all times acted within the course and scope of his employment, agency agreement or relationship.

28. At all times material hereto, the Medical Defendant represented to the Decedent and the ship's passengers as an employee of CARNIVAL in that the Medical Defendant:

   a. worked in the ship's medical center aboard the vessel, which was owned and/or operated by CARNIVAL;

   b. wore a ship's uniform provided by CARNIVAL;

   c. represented themselves as the "ship's medical crew" to the Decedent;

   d. as the ship's doctor was called a ship's officer by CARNIVAL, the ship's officers, and the crew;

   e. ate with the ship's crew;

   f. was under the commands of the ship's officers and followed all of the master's rules and regulations;

   g. charges for medical treatment and medicine directly to passenger's onboard credit program (or the equivalent shipboard credit card) linked to CARNIVAL;

   h. communicated directly with CARNIVAL (to the captain and to unknown persons in CARNIVAL'S shoreside office) while providing treatment to the Decedent;

   i. with literature provided by CARNIVAL and its representatives showed the doctor(s) and nurse(s) as crewmembers and employees of CARNIVAL;

   j. wore CARNIVAL insignias in various places inside the ship's medical center where the medical staff worked;

   k. was employed full-time by CARNIVAL;

   l. was paid a salary by CARNIVAL; and/or

   m. spoke to the Decedent as though it had authority to do so by CARNIVAL.

29. At no time did CARNIVAL represent to the Decedent in particular, or the ship's passengers in general, in any meaningful way, that the Medical Defendant was not an agent or employee of

CARNIVAL.

30. The Decedent reasonably relied on the representation of CARNIVAL that the Medical Defendant was employed by CARNIVAL and that the vessel had a medical center staffed to provide passengers with "full-time, profession emergency medical attention" as guaranteed in the Passenger Bill Rights adopted by CARNIVAL. This reliance was detrimental because it resulted in the Decedent deciding to book and participate in the cruise, presenting to the infirmary and receiving improper and/or substandard medical treatment. Had the Decedent not detrimentally relied on the representations of CARNIVAL and the negligent medical treatment given by the Medical Defendant, Decedent would not have been injured as described herein.

31. At all times material hereto, CARNIVAL knew of the Medical Defendant's agency representations and allowed him to represent himself as such.

## Subject Incident

32. Between February 16, 2020 and February 20, 2020, the Plaintiff and Decedent were paying passengers aboard the subject vessel which sailed from Los Angeles, California.    At all material times, the vessel was in navigable waters.

33. In the late evening of February 17, 2020, Decedent spoke with the medical facility's RN, Jandy Yutuc Pangan, and complained of chest pain that began two (2) hours prior in his cabin.  Decedent reported symptoms of feeling lightheaded and that his heart was beating very hard. The RN instructed Decedent to attend the medical facility and notified Dr. Dowera of Decedent's condition. Decedent was taken to the ship's ICU and placed in a semi high Fowler's position. An EKG was conducted. Dr. Dowera examined Decedent who complained of having chest pain and palpitations. These conditions, if not timely and properly treated, can lead to permanent and life threatening consequences.

34. At approximately 12:00 a.m. on February 18, 2020, Dr. Dowera's examination of Decedent revealed tenderness and pressure of the anterior chest on the left side. Dr. Dowera diagnosed Decedent with Chondrocostal Junction Syndrome [Tietze] and Gastritis and prescribed Decedent with Ketorolac, Omeprazole, Pantoprazole, and Naproxen for pain and gastritis. Dr. Dowera determined Decedent's chest pain was atypical and did not conduct a troponin test. At approximately 12:30 a.m. on February 18, 2020, Dr. Dowera discharged Decedent from the medical facility and instructed him to call 911 if the symptoms continued or worsened.

35. On February 18, 2020 in the morning, Decedent and his wife called the medical facility to inform them that Decedent continued with chest pain and asked if Decedent could take Advil or Tylenol along with his prescribed medications. The medical department's staff nurse advised Decedent that he could take Advil or Tylenol for the pain.

36. On February 18, 2020 at approximately 9:10 p.m., Decedent called the medical facility and complained of continued chest pain and back pain that began three (3) to four (4) hours prior. He also complained of having difficulty breathing.

37. On February 18, 2020 at approximately 9:15 p.m., Decedent went to the medical facility with continued chest pain and back pain and was placed in the ICU. A troponin test, creatine kinase-MB test, chest X-ray, and repeated EKGs were conducted among other laboratory work. Decedent's repeated EKG showed sinus tachycardia, LVH, and non-specific ST segment depression on I, II, aVL, V5 V6. Decedent's Cardiac Troponin I yielded results as being high and CBC showed an increased WBC. Decedent's urinalysis revealed a large amount of protein and blood. Decedent was treated with Aspirin, Clopidogrel, Morphine, and Metoprolol, among other medications.

38. On February 19, 2020 at approximately 3:30 a.m., Decedent was placed on a CPAP machine, supplied with oxygen, and was under cardiac monitor in the ship's ICU.  Dr. Dowera diagnosed Decedent with Acute Subendocardial Myocardial Infarction, unspecified Bronchopneumonia, and Kidney Calculus.

39. On February 19, 2020 at approximately 10:20 a.m. (approximately 35 hours after Decedent initially presented to the medical facility with chest pain), due to the Decedent's ongoing chest pain and increase in cardiac troponin test results, Dr. Dowera notified the Captain and the United States Coast Guard in San Diego to make arrangements for Decedent to be medically evacuated for shore side medical care.

40. On February 19, 2020 at approximately 12:00 p.m., Decedent was evacuated by the United States Coast Guard (USCG) via helicopter.  Decedent lost consciousness during the helicopter transfer and died shortly after arriving to Scripps Memorial Hospital La Jolla in San Diego, California.

41. When Decedent contacted and presented to the infirmary on numerous occasions, his condition was life-threatening.  Decedent experienced chest pain followed by high blood pressure, shortness of breath, and a series of laboratory and diagnostic results indicative of a serious and potentially life-threating condition requiring emergency evacuation so that Decedent could be seen at the appropriate shore side medical facility with the capabilities to provide the medical care required under the circumstances.  The Medical Defendant knew or should have known that time was of the essence yet he failed to timely notify the Master of the vessel and failed to timely contact the USCG to initiate an emergency evacuation which was feasible.

42. Decedent's condition continued to deteriorate and he returned to the medical facility multiple

times during the remainder of his time on the cruise during which time the Medical Defendant failed to properly and timely arrange for an appropriate medical evacuation, mismanaged and failed to properly treat the Decedent's condition and symptoms and provided medical care which fell below the standard of care.  Decedent died from an aortic dissection which is associated with a sudden onset of severe chest or back pain which Decedent was suffering from and complained of while aboard the *Carnival Imagination*.

43. Overall, the treatment that the Decedent received aboard the *Carnival Imagination* fell below the standard of care, was mismanaged, inadequate and was unreasonably delayed. All of which directly led to the worsening of Decedent's medical condition and death.

### COUNT I – NEGLIGENT PROVISIONING AND/OR
### EQUIPPING OF MEDICAL FACILITY AGAINST CARNIVAL

The Plaintiff realleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-three (43) as though alleged originally herein.

44. At all times material hereto, it was the duty of CARNIVAL to exercise reasonable care to properly man the vessel's medical facilities, to provide the appropriate resources to the medical staff, and to provide reasonable and appropriate equipment, supplies, and medications for the vessel's medical facility.  These duties arise through CARNIVAL (a) voluntarily undertaking to provide medical facilities, doctors, nurses and/or other medical staff for passengers aboard its cruise ships; (b) marketing its cruise ships as providing "medical centers [that] meet or exceed the standards established by the Cruise Lines International Association (CLIA) and the American College of Emergency Physicians (ACEP)"; and (c) marketing its cruise ships as having "from one physician and three nurses to as many as two physicians and five nurses."

45. On or about the above date(s), CARNIVAL and/or its agents, servants, joint venturers and/or

employees breached its duty to exercise reasonable care, based on the following acts and/or omissions:

a.   Failing to have an adequate number of medical employees to handle medical emergencies, as it is unrealistic to have a medical team consisting of one doctor and/or two or three nurses to perform all the services required on a ship carrying thousands of passengers and crew;

b.   Failing to have at least one Ship Doctor on duty at all times on a rotational basis;

c.   Failing to supply and/or maintain the vessel's medical facility with operational medical equipment to promptly and/or adequately assess and diagnose Decedent's medical condition;

d.   Failing to supply sufficient and/or adequate medication to promptly and/or adequately treat Decedent's medical condition; and/or

e.   Failing to supply the vessel's medical facility with resources, such as manuals and treatises, and/or access for contacting medical professionals in the United States for consultation about the care and treatment of significant medical conditions of its passengers, including Decedent.

46. The above acts and/or omissions caused and/or contributed to Decedent's injuries because, had Decedent received appropriate care and/or treatment at a reasonably provisioned and/or equipped medical facility, Decedent would not have suffered the injuries alleged herein.

47. At all times material hereto, CARNIVAL knew of the foregoing conditions rendering the medical facility inadequate, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them.  This knowledge was or should have been acquired through (a) inventories and/or inspections of the vessel's medical facility conducted by CARNIVAL, and/or (b) prior incidents involving ship's doctors and/or nurses providing improper medical treatment to passengers aboard CARNIVAL's vessels due, at least in part, to the inadequate medical facilities. *See, e.g., Jensen v. Carnival Corp.*, Case No. 20-cv-21337-UU (S.D. Fla. 2020); *Murphy v. Carnival Corp.*, Case No. 19-cv-21450-RNS (S.D. Fla. 2019); *Gharfeh v.*

*Carnival Corp.*, 309 F. Supp. 3d 1317, 1327 (S.D. Fla. 2018); and *Rinker v. Carnival Corp.*, Case No. 09-23154-CIV (S.D. Fla. 2010). These inventories, inspections and/or prior incidents did or should have revealed the conditions set forth in the preceding paragraphs.

48. As a direct and proximate result of the negligence of CARNIVAL, Decedent was injured about his body and extremities, suffered physical pain and suffering, mental anguish, and died.  Decedent's estate lost earnings of the Decedent and lost the benefit of the prospective net accumulations, which might reasonably have been expected but for the Decedent's death.

WHEREFORE, Plaintiff demands damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT II – NEGLIGENT HIRING AND/OR RETENTION AGAINST CARNIVAL

The Plaintiff realleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-three (43) as though alleged originally herein.

49. At all times material hereto, it was the duty of CARNIVAL to provide Decedent with reasonable care under the circumstances.

50. At all times material hereto, CARNIVAL had a duty to select and/or hire properly qualified and/or competent doctors and nurses.

51. At all times material hereto, as part of its duty to select and/or hire properly qualified and/or competent doctors and nurses, it was incumbent on CARNIVAL to diligently inquire into the Medical Defendant's qualifications and competency.

52. On or about the above date(s), CARNIVAL and/or its agents, servants, joint venturers and/or employees breached its duty to provide Decedent with reasonable care under the circumstances by selecting and/or retaining the Medical Defendant, which was not properly qualified and/or incompetent based on the following:

    a. The Medical Defendant lacked the proper education, licenses, training, experience and/or skills to work in an environment, like the vessel's medical facility, involving emergency and/or critical conditions, like Decedent's condition;

    b. The Medical Defendant lacked the proper education, licenses, training, experience and/or skills to implement and/or follow an adequate system for triage in order to prioritize treatment according to the severity of the condition(s);

    c. The Medical Defendant lacked the proper education, licenses, training, experience and/or skills to promptly and/or adequately diagnose Decedent's emergency and progressive medical condition;

    d. The Medical Defendant lacked the proper education, licenses, training, experience and/or skills to promptly and/or adequately treat Decedent's emergency and progressive medical condition; and/or

    e. The Medical Defendant lacked the proper education, licenses, training, experience and/or skills to promptly and/or adequately evacuate Decedent to an appropriately equipped and staffed shore side medical facility.

53. At all times material hereto, CARNIVAL knew of the foregoing conditions rendering the Medical Defendant unqualified and/or incompetent, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them.  This knowledge was or should have been acquired through CARNIVAL (a) performing a thorough and proper background check on the Medical Defendant; (b) investigating the employment history and/or educational background of the Medical Defendant; and/or (c) periodically investigating and verifying the credentials and/or qualifications of the Medical Defendant.  This knowledge also was or should have been acquired through prior complaints and/or incidents, wherein the Medical

Defendant was alleged to have provided bad medical care.  These background checks, investigations, complaints and/or incidents did or should have revealed the Medical Defendant's lack of proper education, licenses, training, experience and/or skills set forth in the preceding paragraph.

54. As a direct and proximate result of the Medical Defendant's incompetence and/or lack of proper qualifications, Decedent was injured about his body and extremities, suffered physical pain and suffering, mental anguish, and died.  Decedent's estate lost earnings of the Decedent and lost the benefit of the prospective net accumulations, which might reasonably have been expected but for the Decedent's death.

WHEREFORE, Plaintiff demands damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and any other relief this Court deems proper.

### COUNT III - VICARIOUS LIABILITY AGAINST CARNIVAL FOR MEDICAL NEGLIGENCE BASED ON *RESPONDEAT SUPERIOR*

The Plaintiff realleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-three (43) as though alleged originally herein.

55. At all times material hereto, CARNIVAL owned, operated, controlled, and/or maintained the medical center aboard the *Carnival Imagination*, and was responsible for overseeing the operations of the shipboard medical center including the selecting, purchasing, and maintaining of the medical equipment and medications contained therein; recruitment, credentialing and staffing of shipboard medical centers with physicians and nurses;

evaluations, training and coaching of shipboard physicians; and acting as a resource to the shipboard medical personnel and providing guidance and instruction in the event of a medical emergency in said medical center.

56. At all times material, the Medical Defendant was the ship's doctor aboard the vessel *Carnival Imagination*.

57. At all times material hereto, the Medical Defendant was acting within the scope of his employment or agency.

58. At all times material, the Medical Defendant was an agent, servant and/or employee of CARNIVAL which was therefore vicariously liable for the negligent treatment of Decedent under the legal principles of *respondeat superior* and the principles set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

59. At all times material, CARNIVAL acknowledged that the Medical Defendant would act on CARNIVAL's behalf, and the medical personnel accepted the undertaking, based on the following:

   a. The Medical Defendant worked in the medical facility, which was created, owned and/or operated by CARNIVAL;

   b. CARNIVAL's logo and insignias were displayed in various places throughout the medical facility;

   c. CARNIVAL's website publicly described the medical facility in proprietary language, including, but not limited to, "our medical centers…"

   d. CARNIVAL billed and collected payments directly from passengers for the medical services provided by the Medical Defendant, and CARNIVAL did so through passengers' onboard accounts with CARNIVAL;

   e. The Medical Defendant was employed full-time by CARNIVAL;

   f. The Medical Defendant was paid a salary by CARNIVAL;

   g. The Medical Defendant wore uniforms and/or nametags, which were provided by

CARNIVAL and had CARNIVAL's name and logo;

h.  The Medical Defendant referred to himself as a crewmember, and CARNIVAL referred to the Ship's Doctors as ship's officers;

i.  The Medical Defendant was under the commands of the ship's officers and followed all of the master's rules and regulations; and

j.  The Medical Defendant spoke to Decedent as though he had authority to do so by CARNIVAL.

60. At all times material, the Medical Defendant was subject to the control and/or right to control by CARNIVAL, based on the allegations set forth in the preceding paragraph, along with the following:

a.  The Medical Defendant was employed full-time by CARNIVAL, paid a salary by CARNIVAL, and worked in the medical facility created, owned and/or operated by CARNIVAL;

b.  CARNIVAL stocked and equipped the medical facility, and as such, the equipment and medications necessary for the medical personnel to perform their work was furnished by CARNIVAL;

c.  The Medical Defendant was subject to CARNIVAL's training requirements and were under the commands of CARNIVAL's ship's officers and the master's rules and regulations;

d.  CARNIVAL had the right to fire the Medical Defendant.

e.  Setting the standards, criteria, and procedures for selecting and hiring said personnel;

f.  Acting as a resource to the shipboard medical personnel, and providing guidance and instruction in the event of a medical emergency;

g.  Establishing, adopting, and enforcing rules, regulations and protocols for the treatment of patients at its medical center;

h.  Establishing and enforcing the terms of employment for such personnel, including their hours, job duties and the details of their work;

i.  Setting the standards and criteria to determine which patients were to be treated by said personnel;

j.  Determining and setting the specific charges for treatment for its passengers and

requiring that all such charges be paid directly to Defendant on the passenger's shipboard charge card;

k. Supplying the tools, workplace and equipment for said personnel to perform their job duties; and

l. Determining and selecting the medications, drugs, and supplies to be used in the ship's medical center; purchasing said medications, drugs and supplies to stock the medical center; setting the prices for the use and or sale of such medications, drugs and supplies to passengers and requiring the passengers to pay it directly for such medical, drugs and supplies on their shipboard charge cards.

61. At all times material, CARNIVAL acknowledged that the Medical Defendant would act on CARNIVAL's behalf, and the Medical Defendant accepted the undertaking.

62. At all times material, CARNIVAL had a duty to provide Decedent with reasonable care under the circumstances.

63. At all times material, the Medical Defendant owed a duty to provide Decedent with reasonable care under the circumstances.

64. CARNIVAL is vicariously liable under the principles of *respondeat superior,* for the acts and omissions of its employees, servants, agents, ostensible agents, and/or representatives, including but not limited to the medical staff, and breached its duty to exercise reasonable care under the circumstances owed to the Decedent as follows:

a. Failing to properly conduct a comprehensive work-up when the Decedent first presented to the infirmary;

b. Failing to consider and explore other potential diagnoses given Decedent's symptoms and to establish a differential diagnosis(es) given the Decedent's multiple comorbidities, symptoms and conditions;

c. Failing to proactively treat the Decedent with adequate medications in light of the Decedent's multiple comorbidities, symptoms and conditions;

d. Failing to perform serial evaluations to properly monitor, diagnose and treat the Decedent's conditions and symptoms;

e. Failing to recognize and appreciate the seriousness and gravity of the Decedent's

condition when he first presented given his symptoms and comorbidities;

f.  Negligently delaying consultation with an appropriate shoreside specialist(s) when the Decedent presented to the medical center in critical condition;

g.  Negligently delaying the medical evacuation when the Decedent presented in critical condition;

h.  Failure to timely and/or properly assess and diagnosis Decedent and identify emergent, urgent condition of the Decedent in a timely manner, in order to facilitate optimum levels of health care;

i.  Failure to understand and react effectively to Decedent's medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Decedent's condition;

j.  Failure to practice medicine according to generally accepted standards of care;

k.  Failure to adhere and refer to CARNIVAL's policies and procedures;

l.  Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

m.  Breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

65. The above acts and/or omissions caused and/or contributed to Decedent's injuries and death because, had Decedent received appropriate care and/or treatment, Decedent would not have suffered the injuries described herein.

66. As a direct and proximate result of the negligence of the Medical Defendant, as described above, for which CARNIVAL is vicariously liable, Decedent was injured about his body and extremities, suffered physical pain and suffering, mental anguish, and died.  Decedent's estate lost earnings of the Decedent and lost the benefit of the prospective net accumulations, which might reasonably have been expected but for the Decedent's death.

WHEREFORE, Plaintiff demands damages as allowed under the Death on the High Seas

Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and any other relief this Court deems proper.

**COUNT IV - VICARIOUS LIABILITY AGAINST CARNIVAL**
**FOR MEDICAL NEGLIGENCE BASED ON APPARENT AGENCY**

The Plaintiff realleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-three (43) as though alleged originally herein.

67. At all times material, CARNIVAL held out its medical staff, including the Medical Defendant, as being its employee who works in the Defendant's "medical centers" on the vessel. CARNIVAL promotes its medical staff and represents them as being its employees through brochures, internet advertising, and on the vessel. CARNIVAL held out its staff, including the Medical Defendant as being a direct employee or its agent.

68. CARNIVAL promotes the idea that the medical staff who work in its "medical centers" are employed by CARNIVAL as part of a marketing tool to induce passengers, such as the Decedent, to buy cruises on its ships, particularly because the cruise line goes to various foreign ports that may not have adequate medical care.

69. CARNIVAL manifested to the Decedent in this case that its medical staff, were acting as its employees and/or agents in various ways, including but not limited to the following:

   a. The doctors and nurses worked at what CARNIVAL describes in its advertising as its "medical centers";

   b. The "medical centers" are owned and operated by CARNIVAL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

   c. The passenger is billed directly by CARNIVAL through the passengers' Sail Card,

whereas the "medical staff," including the doctor and nurses, are paid salaries and commission by CARNIVAL to work in the "medical centers";

d.  Medical records and forms, including Passenger Shipboard Statements which are given to guests in the medical center, used CARNIVAL's letterhead and logo;

e.  That the medical staff were given uniforms to wear that include name tags, and which have CARNIVAL's name and logo and were required by CARNIVAL to be worn by the medical staff;

f.  That the medical staff are considered to be Officers on board the vessel and a member of the crew, and were introduced to the passengers as Ship's Officers and members of the crew;

g.  That CARNIVAL put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship;

h.  That CARNIVAL requires the medical staff to provide services in the ship's "medical center," which is identified as CARNIVAL's facility, and when Decedent went to the ship's medical center to be seen for his condition, he detrimentally relied upon the representations that it was owned and operated by CARNIVAL and staffed with doctors and nurses, who had been selected and vetted by CARNIVAL.  Decedent would not have authorized the medical staff to treat him if they had known that the medical staff were not employees of CARNIVAL;

i.  There were CARNIVAL's insignias and logos in various locations throughout the medical center; and/or

j.  The medical staff spoke to the Decedent as though they had the authority to do so on behalf of CARNIVAL.

70. At no time did CARNIVAL represent to the Decedent in particular, or the ship's passengers in general, in any meaningful way that the Medical Defendant was not an agent or employee of CARNIVAL.

71. CARNIVAL is estopped to deny that the Medical Defendant was its apparent agent and/or apparent employee and/or apparent servant.

72. At all times material, Decedent detrimentally relied upon the above described representations of CARNIVAL by purchasing and participating in the subject cruise and by seeking and following the medical advice and accepting the treatment provided by Medical

Defendant, reasonably believing that because it was owned and operated by CARNIVAL, the Medical Defendant was its employees and had been properly vetted, selected and trained and was a well-qualified doctor.

73. At all times material hereto, the Decedent relied upon the above described representations of CARNIVAL, which gave rise to her reasonable belief that the Medical Defendant in the medical center was its agent and/or employee, which induced his reliance upon such appearance of agency and accordingly, CARNIVAL is vicariously liable for the negligence of its apparent agents in treating Decedent and set forth above incorporated herein by reference under the principles of apparent agency set forth in *Franza v. Royal Caribbean Cruise Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

74. CARNIVAL is vicariously liable under the principles of apparent agency for the acts and omissions of its apparent agents, servants, and employees, including but not limited to the Medical Defendant, and breached its duty to exercise reasonable care under the circumstances owed to the Decedent as follows:

   a. Failing to properly conduct a comprehensive work-up when the Decedent first presented to the infirmary;

   b. Failing to consider and explore other potential diagnoses given Decedent's symptoms and to establish a differential diagnosis(es) given the Decedent's multiple comorbidities, symptoms and conditions;

   c. Failing to proactively treat the Decedent with adequate medications in light of the Decedent s multiple comorbidities, symptoms and conditions;

   d. Failing to perform serial evaluations to properly monitor, diagnose and treat the Decedent's conditions and symptoms;

   e. Failing to recognize and appreciate the seriousness and gravity of the Decedent's condition when he first presented given his symptoms and comorbidities;

   f. Negligently delaying consultation with an appropriate shoreside specialist(s) when the Decedent presented to the medical center in critical condition;

g.  Negligently delaying the medical evacuation when the Decedent presented in critical condition;

h.  Failure to timely and/or properly assess and diagnosis Decedent and identify emergent, urgent condition of the Decedent in a timely manner, in order to facilitate optimum levels of health care;

i.  Failure to understand and react effectively to Decedent's medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Decedent's condition;

j.  Failure to practice medicine according to generally accepted standards of care;

k.  Failure to adhere and refer to CARNIVAL's policies and procedures;

l.  Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

m.  Breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

75. The above acts and/or omissions caused and/or contributed to Decedent's injuries and death because, had Decedent received appropriate care and/or treatment, Decedent would not have suffered the injuries described herein.

76. As a direct and proximate result of the negligence of the Medical Defendant, as described above, for which CARNIVAL is vicariously liable, Decedent was injured about his body and extremities, suffered physical pain and suffering, mental anguish, and died. Decedent's estate lost earnings of the Decedent and lost the benefit of the prospective net accumulations, which might reasonably have been expected but for the Decedent's death.

WHEREFORE, Plaintiff demands damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of

services, loss of nurture and guidance of dependent children and family, funeral expenses, and all

other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and

any other relief this Court deems proper.

### COUNT V – WRONGFUL DEATH NEGLIGENCE CLAIM AGAINST CARNIVAL FOR THE ACTS OF THE MEDICAL DEFENDANT BASED ON THE THEORY OF VICARIOUS LIABILITY UNDER JOINT VENTURE

The Plaintiff realleges, adopts and incorporates by reference the allegations in paragraphs

one (1) through forty-three (43) as though alleged originally herein.

77. At all times material, CARNIVAL and the Medical Defendant had the intention to engage in

a joint venture to provide medical services to CARNIVAL's passengers.  The intention was

established by verbal agreement and/or conduct.  The common purpose of the venture was to

profit from providing medical services.

78. At all times material hereto, the Medical Defendant was engaged in a joint venture with

CARNIVAL in that he:

   a.  Had a community of interest in the performance of the common purpose of  allowing
       CARNIVAL to successfully and legally carry out its business model and operations and
       in the process to generate profits;

   b.  Had a joint right of control with respect to the operation of the medical center aboard the
       *Carnival Imagination*, the provision of medical services and treatment to passengers of
       said vessel and compliance with the various regulatory duties of CARNIVAL;

   c.  Had a right to share in the profits as described herein; and

   d.  Shared in the losses that may have been sustained as described herein.

79. Some of the facts describing the nature and scope of the joint venture are:

   a.  At all times material, CARNIVAL was and is engaged in the business of providing cruise
       vacation experiences to the public.  Because many of its prospective passengers are older,
       inexperienced foreign travelers, and/or worry about the safety of cruises and the potential
       need to receive medical treatment in foreign countries, the ability to receive proper and
       qualified medical care is a significant concern of potential customers that CARNIVAL
       seeks to address in its marketing and promotional activities and through the operation and

maintenance of modern medical facilities aboard its vessels staffed with qualified doctors and nurses.

b.  At all times material, CARNIVAL also required medical doctors aboard its vessels in order to assist it in complying with its regulatory duties and obligations, including but not limited to those set forth by the U.S. Public Health Service, Drug Enforcement Agency, Coast Guard and Center for Disease Control. CARNIVAL also required medical doctors aboard its vessels to fulfill the requirements of its flag state, to carry a licensed physician as well as of the United States under both the Cruise Vessel Safety and Security Act and the general maritime requirement of maintenance and cure owed to its seamen operating the vessel.

c.  That in order to carry out the above described objectives of its business plan and model and to further allow them to comply with the regulatory requirements imposed by both the flag and port states, CARNIVAL entered into a joint venture with the Medical Defendant to work as the vessel's physician and to maintain, operate, and supervise the medical center aboard the vessel, treat patients and supervise the medical care provided to the vessel's passengers, including the Decedent, crew, and to assist CARNIVAL in complying with its various regulatory requirements.

d.  That as part of this joint venture, CARNIVAL established the rates for the treatment of passengers and the sale and use of medicines and supplies used as part of such treatment, which were paid to CARNIVAL by passengers using their shipboard charge cards. The profits derived from said activities were divided by the Defendants.

e.  Each Defendant further profited in other ways from the joint venture. The joint venture allowed CARNIVAL to carry out its business plan and model to attract passengers to its ships, which in turn created more potential patients and income for the Medical Defendant.  The joint venture also profited the Medical Defendant by opening a new market for his services and creating the potential for them to practice in the extremely lucrative United States medical market.

f.  CARNIVAL and the Medical Defendant invested his own time, money, effort and other resources into this joint venture and therefore to the extent that it was not profitable or successful they shared in the losses and/or expenses.

g.  CARNIVAL and the Medical Defendant relied on a single billing system and a unified strategy of CARNIVAL's marketing and advertisements.  CARNIVAL and the Medical Defendant shared profits and losses, and they split revenue from medical services and supplies rendered to CARNIVAL's thousands of cruise passengers.  The Medical Defendant had the sole discretion to render medical care, treatment and services to passengers and to sell prescription medication and medical supplies to passengers; and the Medical Defendant increased profits by rendering medical care, treatment and services to passengers and by prescribing passengers medications and supplies. CARNIVAL's compensation for the Medical Defendant was dependent, at least in part, on the medical facility's revenues; and the medical facility's revenues depended, at least

in part, on the recommendations and prescriptions the Medical Defendant provided to passengers.  Further, in Florida, a duty to share losses actually and impliedly exists as a matter of law where one party supplies the labor, experience and skill (like the Medical Defendant), and the other the necessary capital (like CARNIVAL).

h.   CARNIVAL controlled and oversaw certain aspects of the day-to-day operations of the medical facility and medical personnel aboard the vessel.  CARNIVAL exercised control through the monitoring and supervision of its shoreside medical department and through the development of standards, policies, procedures and guidelines to which it required the Medical Defendant to adhere and also through its constant electronic communication with the medical center wherever the ship sailed throughout the world. CARNIVAL also maintained control by retaining the ability to terminate, suspend, or modify the Medical Defendant's employment if he failed to comply with its rules, regulations, guidelines and policies.  CARNIVAL controlled and/or had the right to control the marketing of its medical facility and/or the Ship's Doctors.

i.   The Medical Defendant controlled and oversaw certain aspects of the day-to-day operations of the medical facilities and medical personnel aboard the vessel.  The Medical Defendant provided the labor through his consultations, treatment and care to passengers aboard the vessel so as to generate charges to passengers. The Medical Defendant initiated and/or requested medical evacuations for passengers.  The Medical Defendant completed and/or oversaw the medical personnel's completion of medical records.

j.   CARNIVAL and the Medical Defendant also maintained liability insurance coverage for the activities in the performance of the joint venture with the same P & I club and under the same cover.

80. As joint venturers, CARNIVAL and the Medical Defendant is liable for each other's actions and negligence.  As a result, CARNIVAL is liable for the negligent conduct of the Medical Defendant and damages previously described in this Complaint.  Participants in a joint venture are each liable for the torts of the other or the servants of the joint undertaking committed within the course and scope of the undertaking, without regard to which of the joint venturers actually employed the servant.

81. At all times material CARNIVAL and the Medical Defendant had a duty to provide Decedent with reasonable care under the circumstances, including through the acts of its joint venturers.

82. CARNIVAL and/or the Medical Defendant, through the joint venture breached their duty to exercise reasonable care under the circumstances owed to the Decedent as follows:

a.  Failing to properly conduct a comprehensive work-up when the Decedent first presented to the infirmary;

b.  Failing to consider and explore other potential diagnoses given Decedent's symptoms and to establish a differential diagnosis(es) given the Decedent's multiple comorbidities, symptoms and conditions;

c.  Failing to proactively treat the Decedent with adequate medications in light of the Decedent's multiple comorbidities, symptoms and conditions;

d.  Failing to perform serial evaluations to properly monitor, diagnose and treat the Decedent's conditions and symptoms;

e.  Failing to recognize and appreciate the seriousness and gravity of the Decedent's condition when he first presented given his symptoms and comorbidities;

f.  Negligently delaying consultation with an appropriate shoreside specialist(s) when the Decedent presented to the medical center in critical condition;

g.  Negligently delaying the medical evacuation when the Decedent presented in critical condition;

h.  Failure to timely and/or properly assess and diagnosis Decedent and identify emergent, urgent condition of the Decedent in a timely manner, in order to facilitate optimum levels of health care;

i.  Failure to understand and react effectively to Decedent's medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Decedent's condition;

j.  Failure to practice medicine according to generally accepted standards of care;

k.  Failure to adhere and refer to CARNIVAL's policies and procedures;

l.  Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

m.  Breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

83. The above acts and/or omissions caused and/or contributed to Decedent's injuries and death because, had Decedent received appropriate care and/or treatment, Decedent would not have suffered the injuries described herein.

84. As a direct and proximate result of the negligence of the Medical Defendant, as described above, for which CARNIVAL is vicariously liable, Decedent was injured about his body and extremities, suffered physical pain and suffering, mental anguish, and died.  Decedent's estate lost earnings of the Decedent and lost the benefit of the prospective net accumulations, which might reasonably have been expected but for the Decedent's death.

WHEREFORE, Plaintiff demands damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and any other relief this Court deems proper.

## COUNT VI – WRONGFUL DEATH NEGLIGENCE CLAIM AS TO MEDICAL DEFENDANT, DR. DOWERA

The Plaintiff realleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-three (43) as though alleged originally herein.

85. At all times material hereto, the Medical Defendant was the ship's physicians aboard the vessel *Carnival Imagination.*

86. At all times material hereto, the Medical Defendant was a physician holding himself out to the general public, and the Decedent in particular, as being competent and able to safely and properly practice the medical profession.

87. It was the duty of the Medical Defendant to provide Decedent with reasonable care under the

circumstances.   This duty of reasonable care includes the duty to provide prompt, proper and appropriate medical care for Decedent's conditions which did not fall below the applicable standard of medical care for cruise ship doctors and nurses and to further supervise and the medical care and treatment rendered by nurses and other medical personnel under their authority in the medical center.

88. Between February 17, 2020 and February 19, 2020, the Medical Defendant either personally or as a result of the acts or omissions of the other staff in the medical center under whom his authority they were responsible, breached his duty owed to the Decedent.

89. On or about the above dates, Decedent was injured due to the fault and negligence of the Medical Defendant and/or his agents, servants, and/or employees as follows:

   a. Failing to properly conduct a comprehensive work-up when the Decedent first presented to the infirmary;

   b. Failing to consider and explore other potential diagnoses given Decedent's symptoms and to establish a differential diagnosis(es) given the Decedent's multiple comorbidities, symptoms and conditions;

   c. Failing to proactively treat the Decedent with adequate medications in light of the Decedent's multiple comorbidities, symptoms and conditions;

   d. Failing to perform serial evaluations to properly monitor, diagnose and treat the Decedent's conditions and symptoms;

   e. Failing to recognize and appreciate the seriousness and gravity of the Decedent's condition when he first presented given his symptoms and comorbidities;

   f. Negligently delaying consultation with an appropriate shoreside specialist(s) when the Decedent presented to the medical center in critical condition;

   g. Negligently delaying the medical evacuation when the Decedent presented in critical condition;

   h. Failure to timely and/or properly assess and diagnosis Decedent and identify emergent, urgent condition of the Decedent in a timely manner, in order to facilitate optimum levels of health care;

    i.  Failure to understand and react effectively to Decedent's medical needs given his symptoms and comorbidities and to perform accurate and ongoing assessments of Decedent's condition;

    j.  Failure to practice medicine according to generally accepted standards of care;

    k.  Failure to adhere and refer to CARNIVAL's policies and procedures;

    l.  Failure to adhere to industry standards including but not limited to the American College of Emergency Physicians Cruise Ship Guidelines; and/or

    m.  Breaching the prevailing professional standard of care for said health care providers, to wit: that level of care, skill and treatment which, in light of all relevant surrounding circumstances as recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

90. The above acts and/or omissions caused and/or contributed to Decedent's injuries because, had Decedent received appropriate care and/or treatment, Decedent would not have suffered the injuries described herein.

91. As a direct and proximate result of the negligence of the Medical Defendant, as described above, for which CARNIVAL is vicariously liable, Decedent was injured about his body and extremities, suffered physical pain and suffering, mental anguish, and died.  Decedent's estate lost earnings of the Decedent and lost the benefit of the prospective net accumulations, which might reasonably have been expected but for the Decedent's death.

WHEREFORE, Plaintiff demands damages as allowed under the Death on the High Seas Act, 46 USC §30301 et seq., and/or any other applicable wrongful death and/or survival act, including but not limited to pecuniary losses, loss of support, past and future earnings, loss of services, loss of nurture and guidance of dependent children and family, funeral expenses, and all other damages allowable by law. Plaintiff demands a trial by jury for all issues so triable, and any other relief this Court deems proper.

Dated:  February 3, 2021

LIPCON, MARGULIES,

ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:   */s/ Stefanie A. Black*
      **MICHAEL A. WINKLEMAN**
      Florida Bar No. 36719
      mwinkleman@lipcon.com
      **STEFANIE A. BLACK**
      Florida Bar No. 111903
      sblack@lipcon.com